J-A29043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERIC JEFFREY PIPER | : | |
| Appellant | : | No. 1840 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 28, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001819-2018

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED FEBRUARY 2, 2021**

Appellant, Eric Jeffrey Piper, *pro se*, appeals from the aggregate judgment of sentence of 20 to 40 years of confinement, which was imposed after his jury trial convictions for:   criminal attempt to commit criminal homicide; aggravated assault – "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life"; burglary – enters building "adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein"; criminal trespass – "breaks into any building or occupied structure"; simple assault;

_____

[*] Retired Senior Judge assigned to the Superior Court.

recklessly endangering another person; harassment – subject other person to physical contact; and aggravated assault – "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]"[1] We affirm on the basis of the trial court opinion.

On the morning of January 28, 2018, Appellant attempted to bludgeon his wife's lover to death with a hammer, striking him five times in the head. Trial Court Opinion, dated May 18, 2020, at 1.

Appellant's wife, Theresa Piper ("Wife"), visited the victim, Thomas McCutcheon, Jr. ("the Victim"), while he was recuperating in the hospital; upon hearing the Victim's description of his assailant, Wife said, "Kind of sounds like my husband." *Id.* at 3 (quoting the N.T. Trial, Volume 1,[2] at 126[3]). Wife had to return to work but later sent the Victim photographs of Appellant, although the Victim could not positively identify Appellant as his attacker from the photographs. N.T. Trial, Volume 1, at 127-28.

After the Victim was released from the hospital, his aunt, a co-worker, and Wife accompanied him to his apartment, where the attack had occurred; upon seeing a hat and flashlight that did not belong to the Victim, Wife said,

---

[1] 18 Pa.C.S. § 901(a) (to commit § 2501), § 2702(a)(1), § 3502(a)(1)(i), § 3503(a)(1)(ii), § 2701(a)(1), § 2705, § 2709(a)(1), and § 2702(a)(4), respectively.

[2] Volume 1 of the notes of testimony contains the transcripts for March 25 and 26, 2019.

[3] At trial, the Victim testified that Wife made this comment to him. Wife did not testify.

"[T]hat's my husband's." Trial Court Opinion, dated May 18, 2020, at 3 (quoting from testimony of the aunt, N.T. Trial, Volume 1, at 248). She then said to the co-worker, "[T]hose look like something I have seen in my house." *Id.* (quoting co-worker's testimony, N.T. Trial, Volume 1, at 273).

At trial, in addition to the testimony of the Victim, his aunt, and his co-worker, the Commonwealth also presented the testimony of Trooper Andrew Minnich, who testified that Appellant "was developed as a suspect through interviews with [Wife]." N.T. Trial, Volume 2,[4] at 109. Appellant objected and requested a mistrial, which the trial court denied. *Id.* at 109, 111-12.

On March 28, 2019, a jury convicted Appellant of the aforementioned counts.[5] On May 28, 2019, the trial court sentenced Appellant. Two days later, Appellant's counsel filed an application to withdraw and to appoint substitute counsel. The trial court granted counsel's petition to withdraw and granted new counsel leave to file any post-sentence motions within 30 days of sentencing. On June 3, 2019, new counsel filed an application for an enlargement of time to file post-sentence motions, which the trial court

_____

[4] Volume 2 of the notes of testimony contains the transcripts for March 27, 2019.

[5] Appellant did not file any written pretrial motions. Before trial, Appellant made an oral motion to suppress the hat and flashlight found in the Victim's apartment but not any evidence recovered from Appellant's own home pursuant to the execution of a warrant. N.T. Pretrial, 3/25/2019, at 14.

granted on June 4, 2019, permitting Appellant to file post-sentence motions no later than 30 days following receipt of the requested transcripts. Appellant received the transcripts on June 20, 2019, and filed post-sentence motions on July 22, 2019, within the 30 day window granted by the trial court. The trial court denied the post-sentence motion on October 17, 2019, and Appellant filed a timely notice of appeal on November 7, 2019, within 30 days of October 17, 2019. *See* Pa.R.A.P. 903(a) ("the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken"); Pa.R.Crim.P. 720(A)(2)(a) ("[i]f the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion").[6]

On January 3, 2020, Appellant filed a motion to proceed *pro se*. Following a *Grazier*[7] hearing on January 13, 2020, the trial court granted Appellant's motion.

Appellant presents the following issues for our review:

(1)    Did the [t]rial [c]ourt abuse it[s] discretion by allowing testimony relating to the statements and opinions of [Wife], who invoked her spousal privilege?

(2)    Did the [t]rial [c]ourt abuse its discretion by denying Appellant's request for a mistrial after a timely objection to Trooper Andrew Minnich's testimony that "[Appellant] was

_____

[6] Appellant filed his statement of errors complained of on appeal on December 2, 2019. The trial court entered its opinion on May 18, 2020.

[7] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

- 4 -

developed as a suspect through interviews with [Wife]," as this statement violated previously asserted spousal privilege?

(3) Did the [t]rial [c]ourt abuse its discretion in granting the Commonwealth's Motion in Limine to introduce, under excited utterance exception to the hearsay rule, out-of-court statements made by [Wife]; First, representing that the [V]ictim . . . gave [Wife] a description of his attacker, and [Wife] responded by asking [the Victim] if he had ever seen pictures of her husband; and Second, that [Wife] made comments that the flashlight and the hat looked like items from her house and that they may belong to her husband?

(4) Did the Commonwealth display deliberate misconduct in the malicious methods used when Trooper Minnich interrogated [Wife], threatening to take away custody of her children and prosecute her for perjury if she did not testify for the prosecution, causing her no other option than to invoke her spousal privilege, and effectively denying the Appellant of a witness, in turn, suppressing testimonial evidence favorable to the defense?

(5) Did the Commonwealth violate Appellant's [constitutional] rights protecting him against illegal searches and seizures when Trooper Minnich ignored the lawful procedures of searching for and arresting Appellant, in turn, allowed the admission of evidence taken off Appellant's person during the illegal search and seizure?

Appellant's Brief at 2-3 (suggested answers omitted).

Appellant's first four claims challenge the admissibility of Wife's comments incriminating Appellant, all of which were admitted through third-party testimony, as Wife did not testify. *Id.* at 18-25. Appellant contends that such statements are hearsay that do not "fall[] within a firmly rooted hearsay exception." *Id.* at 19.

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable

- 5 -

inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citations omitted).

"'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Under the Rules of Evidence, "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. However, pursuant to Pa.R.E. 803(2):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .
>
> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

The official comment to Pa.R.E. 803(2) further explains:

> This exception has a more narrow base than the exception for a present sense impression [pursuant to Pa.R.E. 803(1)], because it requires an event or condition that is *startling*. However, it is broader in scope because an excited utterance (1) need not describe or explain the startling event or condition; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

Comment to Pa.R.E. 803(2) (emphasis in original).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Albert H. Masland, we conclude Appellant's first four issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. *See* Trial Court Opinion, dated May 18, 2020, at 3-4, 6-7 (finding: "[e]ach of the three statements in question was made in response to and within moments of a startling event: namely, the conversation at the hospital or the discovery at the apartment, both of which were startling insofar as they implicated the declarant's previously law-abiding husband in a most heinous crime"; "stress and agitation was evident with respect to each statement"; the statement of the trooper was harmless, as the jury had already heard from other witnesses that Wife had expressed to them that she had "grave concern and alarm that her husband was the attacker"; Appellant presents no evidentiary support for his assertion that Trooper Minnich threatened Wife).[8]

Finally, Appellant argues that "the Commonwealth violate[d]" his --

constitutional rights protecting him against illegal searches and seizure when Trooper Minnich ignored the lawful procedures of searching for and arresting Appellant, by making nonconsensual entry to a private residence without a proper search warrant, and

---

[8] The trial court opinion also presents an alternative theory that Wife's remarks were admissible under the "present sense impression" exception to hearsay. Trial Court Opinion, dated May 18, 2020, at 5 (citing Pa.R.E. 803(1)). Appellant disputes the applicability of this exception, as well. Appellant's Brief at 23. However, as we find that Wife's declarations qualify for the excited utterance exception, we need not address whether they would also qualify for this alternative exception.

allow[ed] the admission of evidence taken off Appellant's person during the illegal search and seizure[.]

Appellant's Brief at 11.  At no time prior to his appeal did Appellant challenge the legality of the warrant or its execution, and, consequently, he has waived any such claim.  Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Accordingly, we affirm on the basis of the trial court's opinion.  The parties are instructed to attach the opinion of the trial court in any filings referencing this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/02/2021

# Contents

| Document | Page |
|---|---|
| CP-21-CR-0001819-2018 - PIPER - ERIC - IN RE: OPINION PURSUANT TO PENNSYLVANIA RULE( Page Count: 9 | 1 |

COMMONWEALTH : IN THE COURT OF COMMON PLEAS
: OF CUMBERLAND COUNTY, PENNSYLVANIA

V. :

ERIC JEFFREY PIPER : CP-21-CR-1819-2018

**IN RE:  OPINION PURSUANT TO PENNSYLVANIA RULE**

**OF APPELLATE PROCEDURE 1925**

**Masland, J., May 18, 2020:--**

On the morning of January 28, 2018, Tom McCutcheon Jr., having worked the overnight shift as a tow truck driver, returned to his apartment.[1] Lying in wait was a man with a ball-peen hammer, who proceeded to viciously attack Tom, striking him five times in the head.[2]  After several minutes of life-or-death struggle, Tom managed to get control of his firearm; only then did the attacker relent and make his escape.[3]  Tom was hospitalized with horrific and potentially fatal injuries.[4]  Subsequently, the man with the hammer was identified as the Defendant, Eric Piper,[5] whose wife, Theresa Piper, had been in a relationship with Tom for some time

---

[1] N.T. Vol. I, at 96-7.

[2] *Id.* at 98-9, 103.

[3] *Id.* at 105-110.

[4] N.T. Vol. II, at 14.

[5] N.T. Vol. I, at 139.



preceding the attack.[6]  At the conclusion of a jury trial on March 28, 2019,

Defendant was convicted on all counts, including attempted murder and

burglary, and was subsequently sentenced, in the aggregate, to serve a

term of imprisonment of not less than 20 nor more than 40 years.[7]

In this appeal, Defendant alleges that this court erred (1) in admitting

hearsay evidence and (2) in failing to grant a mistrial in response to a

witness referencing a conversation with Defendant's wife, who had

previously invoked spousal privilege.[8]  By way of a supplementary self-

represented concise statement, Defendant further contends (3) that his wife

only invoked spousal privilege in response to improper threats on the part

of the police, with the result that Defendant was wrongfully deprived of a

potentially valuable witness, and (4) that the warrant and search leading to

Defendant's arrest were constitutionally faulty.[9]

---

[6] *Id.* at 71.

[7] In re:  Sentencing Proceedings, at 13, filed June 20, 2019.

[8] Concise Statement Of The Errors Complained Of On Appeal, filed December 2, 2019.

[9] Concise Statement Of Errors On Appeal, filed April 21, 2020.  As the Superior Court is aware, this court
held a *Grazier* hearing on January 13, 2020 to determine if the Defendant's waiver of counsel was
knowing, intelligent and voluntary.  Having concluded that the Defendant could proceed to represent
himself, we afforded him 90 days to supplement the original concise statement filed by counsel.  In light of
the COVID-19 pandemic, we granted him an additional grace period to provide his supplement.

## I.    Discussion

As to hearsay, there are three statements at issue.    First, while visiting with the victim in the hospital, Defendant's wife, responding to the victim's description of his assailant, stated "Kind of sounds like my husband."[10] Second, after the victim was released from the hospital, the Defendant's wife accompanied him to his apartment; upon the discovery of a hat and flashlight, which did not belong to the victim, she exclaimed, "That's my husband's."[11] Third, in a separate reaction to the discovery of the same hat and flashlight, Defendant's wife stated "Those look like something I have seen in my house."[12]

As an exception to the rule against hearsay, an excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."[13] Further, for a declaration to qualify, "[it] must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from [the declarant's] reflective faculties."[14] Each of the three

---

[10] N.T. Vol. I, at 126.

[11] *Id.* at 248.

[12] *Id.* at 273.

[13] Pa.R.E. 803(2)

[14] *Commonwealth v. Murray,* 83 A.3d 137, 157 (Pa. 2013).

statements in question was made in response to and within moments of a startling event: namely, the conversation at the hospital or the discovery at the apartment, both of which were startling insofar as they implicated the declarant's previously law-abiding husband in a most heinous crime. At the time of each statement, Defendant's wife was described as "worried," "nervous," or "obviously upset" as a consequence of what she had just perceived.[15] To illuminate one instance, we turn to the testimony of Christopher Wilkening, who as the Assistant Fire Chief of Monroe Fire Company, had worked with both the victim and Defendant's wife. He was at the apartment when the items of personal property were discovered on the dresser, and noted the following:

> After we bagged the items, I walked out into the living room, and I believe Teri was already out there, and she, I will say kind of pulled me off to the side and said those things look like something I have seen in my house ... She was obviously upset, and she had tears in her eyes. Her voice was — there was some modulation abnormalities. It was not normal. She appeared to be agitated.[16]

Similar stress and agitation was evident with respect to each statement. As such, we found them to fall squarely within the excited utterance exception to the rule against hearsay.

---

[15] N.T. Vol. I, at 133, 248, 273, resp.

[16] N.T. Vol. I, at 273-4.

-4-

Although we propounded the excited utterance exception at trial, in the alternative, we suggest that all three statements are admissible as present sense impressions: i.e. "statements describing or explaining an event or condition, made while or immediately after the declarant perceived it."[17] The exception for present sense impressions is both broader and narrower than the excited utterance exception: broader in that the event perceived need not have been startling, narrower in its temporal aspect. The "[r]elative immediacy of the declaration insures that there will have been little opportunity for reflection or calculated misstatement."[18]

The statements in the case *sub judice* were made immediately after the events they described, those events being the statements by the victim at the hospital and the discovery of the out-of-place items at the victim's apartment. The near-contemporaneity of statement and event in each instance is evidenced by the testimony of the witnesses who relayed the hearsay to the court, each of those witnesses being present to observe both the event and the immediately resulting statement.

Next, the Defendant contends that this court erred in denying his motion for a mistrial, arguing that Trooper Minnich's testimony to the effect

---

[17] Pa.R.E. 803(1).

[18] *Commonwealth v. Coleman*, 326 A.2d 387, 389 (Pa. 1974).

that he developed Defendant as a suspect following a discussion with Defendant's wife was inadmissible by virtue of the fact that Defendant's wife had already invoked spousal privilege.[19] The argument rests on a misunderstanding of the privilege, which only prevents a spouse from being compelled to testify in court, not from having her out of court conversation with a third party mentioned by said third party in court.[20]

Moreover, we found the statement of the Trooper to be harmless. Although the timing of the objection, which interrupted the Trooper mid-sentence, might lead to an inference that the Defendant's wife was the sole source of developing the Defendant as a suspect, the entirety of the Trooper's testimony disproved that. This was made clear by the follow-up questioning about other witnesses the Trooper interviewed. In the context of this case, having already heard that the Defendant's wife had expressed grave concern and alarm that her husband was the attacker, this statement by the Trooper was insignificant. Unless the Superior Court finds that we abused our discretion in admitting the hearsay statements of Defendant's wife, we suggest that this issue is a red herring.

---

[19] N.T. Vol. II, at 109.

[20] 42 Pa.C.S. § 5913.

-6-

In Defendant's self-represented concise statement, he argues that his wife only invoked spousal privilege in response to improper threats by the Commonwealth. This claim is without evidentiary support. To be sure, she was informed of the possibility of a prosecution for filing false reports.[21] And, the Commonwealth did decline to extend immunity to Defendant's wife for whatever testimony she may have offered had she not invoked her privilege.[22] However, those actions, in and of themselves, do not constitute any impropriety on the part of Commonwealth nor did they improperly deny the Defendant an opportunity to call his wife as a witness. Indeed, had she not been informed of the possibility of a false report charge, some judge would be addressing that issue in her post-conviction appeals.

Finally, we find Defendant's rather boilerplate objections to the constitutionality of the warrant and search leading to his arrest once again lacking in evidentiary support. Perhaps, the reluctance of counsel to pursue this meritless claim is part of the reason Defendant is proceeding as his own counsel.[23] At no point prior to the filing of this appeal did Defendant raise any objections, constitutional or otherwise, to the warrant

---

[21] N.T. Vol. II, at 57-58.

[22] *Id.* at 63.

[23] Our *Grazier* finding that Defendant had knowingly, intelligently and voluntarily waived his right to counsel does not equate with a finding that his self-represented pleadings and assertions have any true value.

or search, nor do we find any facts of record to sustain even the slightest appearance of impropriety with respect thereto.

## II. Conclusion

For the foregoing reasons, we respectfully suggest that our decision be affirmed.

By the Court,

Albert H. Masland, J.

District Attorney's Office

Eric Piper, Pro Se
NW1015
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698

mailed on _MAY 19 2020_

Copies delivered on _MAY 19 2020_



# COMMONWEALTH OF PENNSYLVANIA

COURTHOUSE
1 COURTHOUSE SQUARE RM 401
CARLISLE, PA.
17013-3387

ALBERT H. MASLAND
JUDGE

(717) 240-6294

MEMO TO:   Clerk of Court

FROM:      Albert H. Masland, J.

DATE:      May 18, 2020

RE:        Commonwealth v. Piper, CP-21-CR-1819-2018

Please be advised that the above-captioned cases are ready to be sent to the Superior Court.  If there are any problems, please advise.

AHM:sal